UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X   For Online Publication Only
PETER FREEMAN, and
BIONCA FREEMAN,

                        Plaintiffs,                    **MEMORANDUM AND ORDER**
     -against-                                                   13–CV–832 (JMA)

TUAN ANH NGUYEN, and
NGA TUYETA NGUYEN,

                        Defendants.
----------------------------------------------------------X

A P P E A R A N C E S:

Thomas A. Boyle, Esq.
Law Offices of John C. Dearie & Associates
515 Madison Avenue, Suite 1118
New York, New York 10022
    *Attorney for Plaintiffs*

**AZRACK, United States District Judge:**

      On February 14, 2013, plaintiffs Peter Freeman ("Mr. Freeman") and Bionca Freeman (Mrs. Freeman) ("plaintiffs") commenced this action against defendants Tuan Anh Nguyen ("Tuan") and Nga Tuyeta Nguyen ("Nga") for negligence stemming from a 2011 motor vehicle accident in Brooklyn, New York. (See Compl., ECF No. 1.) On December 5, 2013, the Honorable Carol B. Amon referred plaintiffs' motion for a default judgment to me for a report and recommendation. On September 15, 2014, Judge Amon adopted my initial report and recommendation, and granted a default judgment against Tuan on the issue of liability and dismissed the action against Nga. (Sept. 15, 2014 Order, ECF. No. 20.) On July 15, 2014, I held an inquest on damages. (See generally Inquest Hr'g ("Tr."), ECF No. 22.) On December 19, 2014, I was appointed as a district court judge and on January 14, 2015, this case was transferred

1

to me.  For the reasons set forth below, Mr. Freeman is awarded $36,940, consisting of $11,940 for loss of income and $25,000 for pain and suffering, and Mrs. Freeman is awarded $5,000 for loss of consortium.

## I. Findings of Fact

Both plaintiffs testified at the July 15, 2014 inquest hearing.  In further support of their claim for damages, plaintiffs submitted a police report and medical records.  (See generally Tr.; Post-Trial Brief ("Trial Brief") ¶ 5, ECF No. 19.)

Plaintiffs have known each other for approximately ten years and they have been married for eight years.  (Tr. 33.)  They have four children.  (Id. at 3.)  Mr. Freeman, age 44, has been employed as a sanitation worker with the Department of Sanitation for the past nine years.  (Id.) His duties include collecting garbage and plowing snow.  (Id. at 3–4.)  On January 27, 2011, the day of the accident, Mr. Freeman was plowing the streets using a sanitation truck that had a plow attached to the front of the truck.  (Id.)  Tuan, driving a tractor trailer, caught Mr. Freeman's plow while making a turn and dragged the sanitation truck approximately fifty feet.  (Id.)

After speaking with police on the scene, Mr. Freeman was taken to Brookdale Hospital by his supervisor.  (Id. at 13–14, 17.)  While at the hospital, his pain level was a nine out of ten. (Id. at 18.)  Mr. Freeman felt pain in his lower back, groin, hips, and legs.  (Id.)  Hospital staff gave him an injection and took him to radiology to x-ray his spine.  (Id. at 18–19.)  Mr. Freeman was diagnosed with back pain and a muscle spasm, and prescribed Naprosyn.  (Brookdale Univ. Hosp. & Med. Ctr. Med. R. ("Brookdale R.") at 5, 9, Tr. Ex. 2.)  Mr. Freeman was referred to an orthopedist and told he needed an Magnetic Resonance Imaging Scan ("MRI").  (Tr. 19.)

On February 24, 2011, Mr. Freeman saw Dr. Crone, an orthopedist, who x-rayed Mr. Freeman's spine and recommended that Mr. Freeman go to physical therapy, take anti-spasmodic

2

and anti-inflammatory medication, and obtain a MRI of the lumbar spine. (Tr. 19; N.Y. Ortho, Sports Med & Trauma Med. R. ("N.Y. Ortho"), Feb. 24, 2011 Dr. Crone Entry, Tr. Ex. 3; N.Y. Ortho Apr. 4, 2011 Dr. Kaplan Entry, Tr. Ex. 3.) The MRI showed that Mr. Freeman had herniated discs that were impressing at the thecal sac at L3/4 through L5/S1, nerve root impressions and posterolateral displacement, and radial annular tears associated with the L4/5 and L5 disc herniations. (Apr. 21, 2011 Dr. Crone Entry, Tr. Ex. 3; MRI Results, Ex. 4; Tr. 22–24.) After reviewing the MRI, Dr. Crone referred Mr. Freeman for a spinal surgery evaluation. (Apr. 21, 2011 Dr. Crone Entry.) However, Mr. Freeman declined the surgery because he feared losing his job. (Tr. 25.) Mr. Freeman was referred for lumbar epidural steroid injections and physical therapy, and prescribed muscle relaxers and pain medication. (May 23, 2011 Dr. Kaplan Entry, Ex. 3.) Mr. Freeman received approximately 12 sessions of physical therapy at Metro Sportsmed in 2011. (Tr. at 23–24.)[1]

Following the accident, Mr. Freeman was out of work for about six months—from the end of January through the beginning of July. (Id. at 25–28.) Upon returning from leave, Mr. Freeman was placed on limited duty for about three months, which consisted of clerical and security work. (Id. at 28.) After returning to his regular duties, Mr. Freeman had to take, at various points, an additional four days of leave due to back pain stemming from the accident. (Id. at 28–29.)

When Mr. Freeman was on leave and limited duty, he was paid his regular salary. (Id. at 25–26.) However, for every day that he actually worked on a sanitation truck he would get an

---

[1] Plaintiffs submitted physical therapy records from Metro Sportsmed; however, none of these records are from his physical therapy sessions in 2011. (See generally Metro Sportsmed ("Sportsmed") Med. R. ("Sportsmed R."), Ex. 5.) In addition, although some of these physical therapy documents refer to an ankle injury—nothing in the current record indicates that this ankle injury was related to the 2011 accident. (See id., Apr. 15, 2014 Initial Exam. for Peter Freeman.)

additional $60 over and above his regular salary. (Id. at 26.) He did not receive this $60 premium when he was on leave or light duty. (Id. at 28.)

Mr. Freeman's testimony suggests that he may have also missed some sporadic weekend and holiday assignments while he was on leave and light duty. (Id. at 26.) Generally, every two to three months, he would work a Sunday that he would have off and would come in on holiday weeks. (Id.)

Mr. Freeman continues to have difficulty performing his job, sitting for long periods, and lifting items. (Id. at 29.) Mr. Freeman also has difficulty playing with his kids, performing certain household chores, and engaging in sexual relations with his wife. (Id. at 29–32.) On occasion, Mr. Freeman has reinjured his back lifting something. (Id. at 31.) Because he fears for his back, he cannot play with his kids or engage in sexual relations for about a month after these episodes. (Id.) Mr. Freeman's testimony suggests that these flare-ups do not cause him to miss work. (Id. at 30–31).[2]

Mr. Freeman testified that on the day of the hearing his pain level was a three or four out of ten. (Id. at 27.) Sometimes, when he lies down or sits too long, his pain level increases to a six or seven. (Id.) The last time he went to the doctor regarding his back pain was as recent as two weeks before the hearing. (Id. at 26–27.)

According to Mrs. Freeman, the accident caused the plaintiffs emotional and physical stress and strained their marriage. (Id. at 34–36.) Mr. Freeman can no longer help her around the house like he used to and their sexual relations decreased. (Id.) Overall, the marriage became less balanced—although their responsibilities were "50/50," Mrs. Freeman had to shoulder most of the household and parental responsibilities for approximately a year after the

---

[2] Despite his testimony, Mr. Freeman's medical records from Sportmed indicate that in 2013, Mr. Freeman reinjured his back while lifting an object at work and was out of work for a period of time. (Sportsmed R. May 8, 2013 Initial Exam. for Peter Freeman.) There is insufficient evidence concerning the length of his purported absence.

4

accident. (Id. at 34–35.) According to Mrs. Freeman, Mr. Freeman is not the same person after the accident and some of the medications he takes cause him to be depressed. (Id. at 35–36.)

## II. Damages

Although allegations pertaining to liability are deemed admitted upon entry of a default judgment, allegations related to damages are not. Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Credit Lyonnais, 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).

A default "effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in [the] complaint violated the laws upon which [the] claim is based and caused injuries as alleged." Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 111 (E.D.N.Y. 1997) (internal citation omitted). The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Greyhound Exhibit Grp., Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992).

Where a federal court's subject matter jurisdiction is based on diversity, the assessment of damages in a negligence action is governed by the law of the state in which the negligent act or omission took place. See Erie R.R. v. Tompkins, 304 U.S. 64, 69–78 (1938); Contri v. Yellow Freight System, Inc., No. 92–CV–2603, 1996 WL 87237, at *2 (S.D.N.Y. Feb. 29, 1996). Here, New York law applies.

Plaintiffs seek an award of $100,000 for medical expenses, loss of income, pain and suffering, and loss of consortium. (Trial Brief ¶ 15.) I will address each claim in turn.

5

### A. Medical Expenses

Mr. Freeman seeks an unspecified award for medical expenses he incurred due to the accident. (Trial Brief ¶ 14). The relevant documents that Mr. Freeman submitted regarding to his medical expenses indicate that those expenses were completely covered by a collateral source, i.e. worker's compensation and/or his insurance. (See generally Metro Athletic Med. & Fitness at 2, Sportsmed R., Ex. 5.) Therefore, in accordance with New York Civil Practice Law and Rules ("CPLR") § 4545, Mr. Freeman is not entitled to any recovery for medical expenses.

### B. Loss of Earnings

Mr. Freeman seeks compensation for loss of past earnings. (Trial Brief ¶ 14.) "The basic [New York] rule is that loss of earnings must be established with reasonable certainty, focusing, in part, on the plaintiff's earning capacity both before and after the accident." Clanton v. Agoglitta, 206 A.D.2d 497, 499, 615 N.Y.S.2d 68, 68 (App. Div. 2d Dep't 1994). Damages for loss of past earnings may be awarded "based solely on plaintiff's testimony without supporting documentation. . . ." Kane v. Coundorous, 11 A.D.3d 304, 305, 783 N.Y.S.2d 530, 531 (App. Div. 1st Dep't 2004); accord Ferguson v. City of New York, 73 A.D.3d 649, 650, 901 N.Y.S.2d 609, 609 (App. Div. 1st Dep't 2010).

Mr. Freeman was paid his regular salary for the duration of his leave and limited duty, but did not receive the $60 daily premium for driving the sanitation truck. Therefore, he is entitled to the loss of that income for the time he was on leave and on limited duty due to the accident. However, I find that any income that Mr. Freeman may have lost for weekend and holiday work is too speculative to warrant an additional award. Further, I find that Mr. Freeman has failed to prove, to a reasonable certainty, damages related to any absences from work stemming from his 2013 back injury. Among other things, Mr. Freeman did not provide

sufficient evidence regarding the length of this absence. Moreover, Mr. Freeman's failure to specifically request damages related to this absence in his post-trial brief is an additional reason to deny such damages.

Therefore, Mr. Freeman is awarded $11,940 for loss of income.[3]

**C. Pain and Suffering**

Plaintiff also seeks compensation for pain and suffering. (Trial Brief ¶ 14.) "New York courts have awarded past pain and suffering damages based on the medical procedures endured and nature of the injury suffered," as well as for emotional pain and loss of enjoyment of the pleasurable activities of life. House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 209–10 (2d Cir. 2010) (collecting cases); Sales v. Republic of Uganda, 828 F. Supp. 1032, 1044 (S.D.N.Y. 1993). Under New York law, no precise rule has been formulated, either to measure pain or to compensate for it in money damages. See Gottesman v. Ashdod, No. 00–CV–5139, 2003 WL 21383819, at *2 (S.D.N.Y. 2003); Wolfe v. General Mills, Inc., 35 Misc. 2d 996, 1000, 231 N.Y.S.2d 918, 918 (Sup Ct, Erie County 1962).

Taking into consideration all of the evidence regarding Mr. Freeman's physical condition, medical procedures endured, and the affect the accident had on him and his relationship with his wife and children, Mr. Freeman is awarded $25,000 for pain and suffering.

**D. Loss of Consortium**

Mrs. Freeman seeks an award for loss of consortium. (Trial Brief ¶ 15.) Under New York law, the cause of action for loss of consortium is designed to "'compensate for the injury to th[e marital] relationship' and to 'the interest of the injured party's spouse in the continuance of a healthy and happy marital life. . . .'" Rangolan v. Cnty. of Nassau, 370 F.3d 239, 248 (2d Cir.

---

[3] Mr. Freeman missed the $60 daily premium for approximately 199 days (5 days per week X 39 weeks + 4 additional days of leave = 199 days).

2004). A loss of consortium claim "covers the loss of support and services provided by the injured spouse as well as such elements as love, companionship, affection, society, sexual relations, and solace." Zavaglia v. Sarah Neuman Ctr. for Healthcare & Rehab., 25 Misc. 3d 590, 594, 883 N.Y.S.2d 889, 893 (Sup Ct, Westchester County 2009) (internal citations omitted). Loss can be "'reasonably inferred from the state of marriage itself.'" Rangolan, 370 F.3d at 248.

Taking into consideration Mrs. Freeman's testimony on how the accident affected her and her husband's martial relationship, Mrs. Freeman is awarded $5,000 for loss of consortium.

### III. Conclusion

For the foregoing reasons, Mr. Freeman is awarded $36,940, comprised of $11,940 for loss of income and $25,000 for pain and suffering, and Mrs. Freeman is awarded $5,000 for loss of consortium. I respectfully direct the Clerk of Court to enter judgment against defendant Tuan accordingly.

The Clerk of Court is respectfully requested to close this case. Plaintiffs are ordered to serve a copy of this Memorandum and Order on Tuan and promptly file a declaration of service.

SO ORDERED.

Dated: January 15, 2015
Brooklyn, New York

                 /s/ (JMA)
                JOAN M. AZRACK
                UNITED STATES DISTRICT JUDGE
                EASTERN DISTRICT OF NEW YORK